UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DONNIE HATCHER, JR., | ) | CASE NO. 1:10 CV 0168 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| J. T. SHARTLE, et al., | ) | |
| | ) | |
| Respondents. | ) | |

Before the court is pro se petitioner Donnie Hatcher's above-captioned petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Mr. Hatcher, who is incarcerated at the Federal Correctional Institute in Elkton, Ohio (F.C.I. Elkton), names F.C.I. Elkton Warden J.T. Shartle, Case Manager Pam Steiner and National Inmate Appeals Administrator Harrell Watts as respondents. Petitioner asserts his "liberty" is being restrained by the respondents' violation of his right to due process.[1]

---

[1] Petitioner raised these issues previously in a habeas petition in this court, which was denied without prejudice on May 28, 2009 for failing to exhaust administrative remedies. See
(continued...)

*Background*

Petitioner pled guilty to conspiracy to possess with intent to distribute cocaine on February 2, 2005. United States v. Hatcher, No. 1:03 CR 308 (N.D. Ohio filed 2003).  This court sentenced him on May 3, 2005 to 120 months in prison, followed by eight years of supervised relief. The Sixth Circuit affirmed his conviction and sentence on November 29, 2006.

Mr. Hatcher filed an "Inmate Request to Staff," dated January 31, 2009.  He requested consideration for placement in an Ohio residential re-entry center ("RRC") during the first part of 2009. On March 3, 2009, Case Manager Pam Steiner responded, "This matter will be reviewed at your next team [meeting] in April 2009."

After his team meeting was held in April, Mr. Hatcher received a Notice of RDAP Qualification indicating he did not qualify for the residential drug abuse program.  In the "Comment" portion of the Notice it states: "There is no verifying documentation of a substance use disorder within the 12 months prior to arrest."  (Pet.'s Ex. G.)  Mr. Hatcher's signature indicates he received the Notice on June 23, 2009.

On August 18, 2009, petitioner filed a Central Office Administrative Remedy Appeal. Harrell Watts denied the appeal in a letter dated December 14, 2009.  Mr. Watts explained Program Statement 7310.04 controls the recommendation of prisoners in RRC and dictates that determinations are "based on the individual's needs, existing community resources, institution adjustment, length of sentence and the need to provide for the safety and security of the general public." (Letter from Watts to Hatcher of 12/14/2009 ).  He noted further that the Second Chance

---

[1](...continued)
Hatcher v. Shartle, No. 1:09CV1151 (N.D. Ohio filed May 28, 2009)(Polster, J.)

Act of 2007 added five assessment factors from 18 U.S.C. § 3621(b). Mr. Watts's review of the petitioner's record indicated the five factors, as well as P.S. 7310.04 were considered before the request for RRC placement was denied. He also noted petitioner would be considered for placement again between 17 and 19 months of his July 13, 2012 projected release date.

*Analysis*

Petitioner now argues the denial of his placement in a RRC was neither uniform nor fair. This has allegedly occurred because federal prisons across the United States subjectively apply standards of review for prisoner placement in RRCs. He adds the respondents' actions are a violation of the Administrative Procedures Act, 5 U.S.C. § 551 because BOP regulations directly conflict with 18 U.S.C. § 3621(b). Specifically, it is at the point where a prisoner may be considered for initial placement in or transfer to a RRC that he believes there is a lack of uniform application.

At the time Mr. Hatcher filed this petition, he claimed he had completed over 60% of his sentence, which included 18.4 months jail credit. He complains that the statute precludes the BOP from limiting his placement in an RRC to the last 10% of sentence. Citing Rodriguez v. Smith, 541 F.3d 1180 (9th Cir. 2008), Mr. Hatcher argues the BOP's regulation cannot categorically limit a prisoner's placement. Quoting from Rodriguez, Mr. Hatcher criticizes Warden Smith's opinion that the BOP can wait until a prisoner completes 90% of his sentence before being considered for placement in a RRC.[2] Petitioner concludes that the plain language of 3621(b) and 3624(c) "make clear that this argument must fail." (Pet. at 7.) He then proceeds to cite several circuit court opinions that have attacked the BOP's attempt to limit a prisoner's placement in a RRC to the last

---

[2] The court notes that Mr. Hatcher's criticism is misplaced. Warden Smith is not a party to this petition and there is no evidence or allegation Warden Shartle adopted the position of Warden Smith in Rodriguez.

10% of his sentence, or where the BOP has interpreted §3624(c) to allow this limitation.

Mr. Hatcher argues that each time his program review is conducted, he is informed "that he will be considered for RRC or C.C.C. placement once he reaches 11 or 13 months of his projected release date." (Pet. at 10.) He argues this is a categorical restriction on his right to be considered for placement at any time.

*Initial Review*

This matter is before the court for screening. 28 U.S.C. § 2243; Harper v. Thoms, No. 02-5520 2002, WL 31388736, at *1 (6th Cir. Oct. 22, 2002). At this stage, allegations in the petition are taken as true and liberally construed in petitioner's favor. Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir.2001). As Mr. Hatcher is appearing pro se, his petition is held to less stringent standards than those drafted by attorneys. Burton v. Jones, 321 F.3d 569, 573 (6th Cir.2003); Hahn v. Star Bank, 190 F.3d 708, 715 (6th Cir.1999). Because petitioner's allegations address a regulation and rules that are no longer in place, the court is compelled to clarify the relevant case law to which his circumstances are now subject.

*Pre-Release Community Confinement*

The BOP's authority to designate where federal prisoners are confined is essentially based on two statutes. The first, 18 U.S.C. § 3621(b), states:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets the minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>
> > (1) the resources of the facility contemplated;
> > (2) the nature and circumstances of the offense;

> > (3) the history and characteristics of the prisoner;
> > (4) any statement by the court that imposed the sentence-
> > > (A) concerning the purposes for which the sentence to imprisonment w a s determined to be warranted; or
> > > (B) recommending a type of penal or correctional facility as a appropriate; and
> > (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> > In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b). The second relevant statute, 18 U.S.C. § 3624(c), charges the BOP with facilitating a prisoner's reentry into society. It states, in relevant part:

> > The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c).

Before December 2002, the BOP allowed prisoners to be placed "'in a CCC for more than the 'last ten per centum of the term,' or more than six months, if appropriate." Levine v. Apker, 455 F.3d 71, 75 (2d Cir.2006) (quoting U.S. Dept. of Justice, Federal Bureau of Prisons Program Statement 7310.04 (Dec. 16, 1998)). In December 2002, the Department of Justice Office of Legal Counsel issued a memorandum announcing a "significant procedure change" in the BOP's policy of placing offenders in C.C.C.s for all or a significant portion of their sentences. United States v. Sherpa, 251 F. Supp.2d 988, 990 (D. Mass. 2003) (internal quotation omitted).

The 2002 memorandum concluded that § 3621 did not confer general authority on

-5-

the BOP to place an offender in a C.C.C. at any time or for any period of time. Instead, the memorandum concluded the BOP's authority to place an offender in community confinement derived solely from § 3624(c), which limits the time an offender may be placed in a C.C.C. to the lesser of six months or ten percent of the offender's sentence. See Woodall v. Bureau of Prisons, 432 F.3d 235, 240 (3d Cir.2005).

The BOP adopted a new policy on December 20, 2002 to reflect the Office of Legal Counsel's position that inmates may only be released to community confinement for the last ten percent of their terms of imprisonment or six months, whichever is shorter. See id. This policy prompted a flood of lawsuits from offenders challenging its validity. Ultimately, the First and Eighth Circuit Courts of Appeals found the 2002 policy unlawful because it limited the BOP's discretion to transfer offenders to a C.C.C., thus restricting transfer only to the last 10 % of an offender's sentence or six months and contradicting the plain meaning of § 3621(b), which grants general authority to the BOP to transfer prisoners at any time during their term of incarceration after an individualized determination of the appropriateness of a transfer based upon certain enumerated factors. Elwood v. Jeter, 386 F.3d 842 (8th Cir.2004); Goldings v. Winn, 383 F.3d 17 (1st Cir.2004).

Responding to these decisions, the BOP adopted a new set of rules regulating C.C.C. placement, effective February 14, 2005. The regulations, 28 C.F.R. §§ 570.20 and 570.21, were announced as a "categorical exercise of discretion [by the BOP] for designating inmates to community confinement." 28 C.F.R. § 570.20. The regulations categorically denied C.C.C. placement to any inmate not in the lesser of the last 10 % or six months of his sentence, except under certain limited, enumerated circumstances:

> (a) The Bureau will designate inmates to community confinement only as part of pre-release

> custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
> 
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority for example, residential substance abuse treatment program (18 U.S.C. § 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. § 4046(c)).

28 C.F.R. §§ 570.21. Several courts in this circuit held the BOP's policy of categorically excluding placement in community confinement until the last ten percent or six months of a prisoner's sentence is contrary to congressional intent and that the BOP must apply the factors in 18 U.S.C. § 3621(b) when considering C.C.C. placement. See Luckett v. Eichenlaub, No. 07-10118, 2007 WL 3124666 (E.D. Mich. Oct.24, 2007); Halter v. Eichenlaub, No. 2:07-CV-11072, 2007 WL 2873944 (E.D. Mich. Sept. 25, 2007); Weirup v. Eichenlaub, No. 2:07-10672, 2007 WL 2300715 (E.D. Mich. Aug.7, 2007); Holloway v. Marberry, No. 2:06-12516, 2007 WL 1880386 (E.D. Mich. June 27, 2007).

*Second Chance Act of 2007*

In the midst of these challenges, Congress amended 18 U.S.C. § 3624(c)(1) through the Second Chance Act of 2007 ("the Act"), 42 U.S.C. § 17501, which was enacted on April 9, 2008. The Act amended § 3624(c)(1) to provide that the BOP Director shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Second Chance Act, Pub. L. 110-199, § 251, 122 Stat. 660, 692 (2008).

In accordance with the Act, the BOP issued an interim policy memorandum on April

14, 2008 to address RRC placement considerations. The memorandum states that the "categorical timeframe limitations on prerelease community confinement" found in 28 C.F.R. §§ 570.20 and 570.21 (i.e., the ten percent limit that Petitioner challenges in this petition) "are no longer applicable and must no longer be followed." The memorandum further requires that RRC placement decisions be made on an individual basis with reference to the five-factor criteria set out in section 3621(b). Inmates previously denied RRC placement were to be reconsidered under the standards set out in the memorandum. See Montes v. Sanders, 2008 WL 2844494, at *1 (C.D.Cal. July 22, 2008);see also Miller v. Whitehead, 527 F.3d 752, 755 (8th Cir.2008) ("In reaction to this statute, and the new 12-month maximum placement, the BOP issued guidance directing that 'inmates must now be reviewed for pre-release RRC placements 17-19 months before their projected release dates.' ")

The BOP's website indicates Mr. Hatcher's release date is July 13, 2012. http://www.bop.gov.  While he seeks immediate consideration for CCC placement, his request does not take into consideration whether the BOP's actions are in compliance with the Act. The BOP's interim policy memorandum on C.C.C. placement consideration, which resulted from the newly enacted statute, requires that C.C.C. placement decisions be made on an individual basis with reference to the five-factor criteria set out in 18 U.S.C. § 3621(b), which provides as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the

>                   sentence--
>                   (A) concerning the purposes for which theسentence to imprisonment was determined to be warranted; or
>                   (B) recommending a type of penal or correctional facility as appropriate; and
>                   (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). Therefore, before a prisoner is even considered eligible for transfer, the BOP must consider the factors set forth in 18 U.S.C. § 3621(b).

*Transfer Not Appropriate Remedy*

Here, petitioner seeks invalidation of the categorical 10 percent limitation of 28 C.F.R. § 570.21. That request was accomplished by passage of the Second Chance Act and the BOP's memorandum instituting an interim policy conforming to the Act. The remedy in this case is not an immediate transfer; rather, Mr. Hatcher's remedy is a proper exercise of discretion by respondent. See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 251 (3d Cir.2005). Petitioner has received, through legislative and administrative action, all of the relief to which he might have been entitled had such action not been taken. Thus, this court's continuing jurisdiction would violate the constitutional requirement that there be a live 'case' or 'controversy.'

Finally, to the extent petitioner argues his constitutional rights are being violated because respondents have failed to consistently select eligible inmates for placement in a C.C.C., he has no constitutional right to serve his sentence in a facility more to his choosing. Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner." 18 U.S.C. § 3621; Moody v. Daggett, 429 U.S. 78, 88 (1976); Beard v. Livesay, 798 F.2d 874 (6th Cir.1986). There is no constitutional or inherent right of a convicted person to be released before the expiration of a valid

sentence. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979).

Petitioner has no due process right, protected by the Fifth Amendment, to be placed in a CCC earlier than the date on which the BOP assigns him--as long it has considered the factors set forth in § 3621(b) as required by the Second Chance Act of 2007. The statute was enacted on April 9, 2008. Mr. Hatcher submitted his BP-9 on January 31, 2009, nine months after enactment of the statute. As stated in Mr. Watts's letter denying petitioner's appeal, all of the factors set forth in § 3621(b) were applied to the specifics of petitioner's case as required by the new statute. Consistent with the statue, petitioner will also be reconsidered for placement between 17 and 19 months of his July 13, 2012 projected release date.

*Conclusion*

Based on the foregoing, this petition is dismissed pursuant to 28 U.S.C. § 2243. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

*/s/Dan Aaron Polster 4/27/10*
DAN AARON POLSTER
UNITED STATES DISTRICT JUDGE